117-2290 Daniel Dodd-Austin v. Central Groceries We're waiting for you. Go ahead. Your Honor, as I represent the appellant in this matter before the court, Central Grocers, we would ask that this court... We'll argue, first of all. Tell us your name. James Scheider. Okay, go ahead. And I represent the appellant, Central Grocers, in the matter before this court. We would ask that this court uphold or confirm the decision of the Illinois Workers' Compensation Commission in finding the petitioner to stay a workplace asset in the rise and fall in the course of his employment to the degree that he had an aggravation of sprain-slash-string injury to the left knee and thigh area. With that being said, TTE would be proper through the date of February 27, 2015, or the date he was examined by Dr. Bush Joseph. Now, in this case, one appeal from the Workers' Compensation Commission to the circuit court was subsequently found that the appellant's expert witness testimony should be tossed based upon not having the records in foundation in addition to other factual determinations. And you're here and you disagree with the circuit court's ruling, right? I do. And why is that? I think it's against the manifest way of the evidence overall. But with regard to the issue of expert medical testimony, I think there was an adequate foundation for Dr. Carlson's opinions in this case. Well, that's it. The commission believed Carlson over the other doctor, correct? Absolutely. Generally, that's their province. The circuit court, as I read the record, found that there was a foundation lacking for Carlson's opinion, correct? That would be correct. And how do you answer that? Isn't that totally a matter of weight as to the opinion or is the whole opinion tossed? That would be exactly my position as laid out. I think that it should go to the weight of the evidence, which would be in the proper province of the commission to decide based upon their specialty in dealing with medical issues and issues of fact when dealing with manifest way standard of review. Didn't the circuit court point out some things why it found that the evidentiary foundation was defective? The circuit court found that the evidentiary foundation was defective based upon speculation or conjecture. And in the appellate's opinion, this was an arbitrary finding based upon their lack of willingness to look into the evidence further. The basis is that they couldn't believe that the sign that Archer, I'm sorry, I mean Dr. Carlson's opinions had any merit in finding that Petitioner would suffer pre-existing symptoms and conditions prior to the date of accident and injury alleged just because they weren't documented within medical records. So your position is simple. The circuit court erred in overruling the commission's decision because Carlson's causation opinion should have been considered even if there were allegedly some deficiencies in it and what to weight not admissibility. Is that your opinion? I don't think there were any deficiencies in it. But even if there were? If there were, they would go to the weight and not admissibility. So I think the circuit court was wrong in that regard. And with Dr. Carlson's opinion within the record, analyzing the issue for weight, I think the manifest weight standard or burden cannot be met, which is exactly, I would premise, why the circuit court excluded his opinions because they knew this. Well, you don't have to get into speculation yourself. Well, I wanted to address a preliminary matter for you guys regarding the jurisdiction of this case. Since the case was remanded to the commission for further findings of prospective medical care and PPE benefits, generally this case would not necessarily be reviewed by this court or would have to go down before it came back up. You didn't file a motion to challenge jurisdiction, did you? I did not. Since I was the appellant in this case, I didn't feel it would be proper to challenge the jurisdiction. It's my own appeal. Well, you know that the Hornbook law, if it's remanded for further proceedings that are going to involve any disputed issues of fact, then obviously we would not have jurisdiction. What about the argument it was remanded simply for mathematical computations? Well, I would argue that it was remanded simply for mathematical calculations or anchoring the judgment in accordance with the directions of the court. It was or it wasn't? It was remanded for mere mathematical calculations or not? Well, it was remanded for mathematical calculations and judgment in accordance with the direction of the reviewing court. Well, then you just undercut your argument because the exception, if it's remanded merely for mathematical calculations, then an appeal would be proper. It's a simple calculation. If it's remanded for disputed evidentiary issues or disputed issues of fact, then it wouldn't be. No, I don't think there are any disputed evidentiary issues or issues of fact, but the facts are made in this case that it was remanded to the commission to enter an order consistent with its findings. And in that order, they ordered exactly the future medical care to be prescribed. So the wording of the order, the plain language indicates that it was remanded for findings on this issue, but they also ordered this to be consistent with their opinion. Well, their opinion was on exactly the future medical care to be prescribed. And what about the TTD? Does the opinion lay out the TTD that's to be ordered? The opinion lays out the entire basis for the TTD. The circuit court found that the petitioner suffered a positive related workplace injury that remained through the time of trial, and the petitioner was unable to return to work. Beyond this, the parties stipulated to the average weekly wage, and the commission previously entered determinations of calculation of TTD. So this would only lead to the determination that TTD needed to be issued. But then you're undercutting your argument, because let me see if I can pin this down. The circuit court's remand order merely required the commission to enter an order in accordance with the directions of the reviewing court, did not require the commission to make any additional findings or any additional resolutions of disputed records on remand. Right? Yes. Then why was the order final and appealable? It was final and appealable. I'm just explaining the basis of why it was final and appealable. This would result in a simple mathematical calculation. So they award TTD up to the date of the arbitration hearing at the average weekly wage that was agreed upon, and there to award a future medical in the amount specified that was already in the evidence. Is that right? I think they would need to issue TTD. I think you said the average weekly wage. TTD at the average weekly wage up until the date of arbitration? Yes, that would be correct. Okay. All right. So if jurisdiction is found in this case, which I believe it should be, that would move this case forward to determine if the original decision of the Illinois Workers' Compensation Commission was against the manifest way to the evidence. Now, in order for it to be against the manifest way to the evidence, the opposing counsel would need to show that there wasn't sufficient support in the commission's finding, not only that an opposite conclusion could have been reached based on the evidence. In this case, I think the opinions of Dr. Carlson are clear and convincing, which appear to have been relied upon by the commission, in addition to other evidence, in supporting the petitioner to suffer a sprain-slash-strain injury but did not suffer an aggravation of the underlying degenerative joint condition. Specifically, MRI evidence did not evidence any form of acute aggravation of the joint or any findings that would support that based upon there was no edema present at the time of the MRI. There was no signs of recent collapse within the joint, except there was a long-standing degenerative arthritis evidence within the MRI. As evidenced by Carlson's opinion. And not only by Carlson's opinion. The true opposition, Bush-Joseph, reviewed the MRI and found that there was degenerative arthritis within the joint. In addition, Dr. Bush-Joseph took x-rays at that time. At the time of his exam, in February, or more than a half after the accident, he found that the petitioner had a pistol grip deforming.   And there was no evidence that the petitioner had a gun grip. All right. Before you conclude, let me ask you this very direct question. Did Carlson rule out aggravation of a preexisting condition? Yes, he did. He covered that? He covered that. Because if he didn't, there's a well-settled body of law that says that the aggravation of an existing condition is compensable. It doesn't have to be the sole cause or the only cause of the injury. But Carlson did cover that in his opinion. Carlson did cover that in his opinion. Okay. I think we get your point. So, I think on that basis, there's a standard case of an IMU versus a truger. And the commission weighed the evidence. They weighed the issue before them. And they determined that Dr. Carlson's opinions were more convincing. On that basis, we would describe that the commission's decision was not against the manifest weight of the evidence. And ask that this court confirm the original commission decision. Counsel, thank you. We'll give you some time for a response. Good morning, Justices. May it please the Court. Andrew Kriegel here on behalf of Plaintiff Attorney Daniel Donaldson. As a threshold matter, my first argument is that the order of the circuit court was not final and appealable. Why not? This court. Why not? Why isn't it final and appealable? Well, the order of the circuit court. Remanded it to award CTD and remanded it to award prospective medical. Yes. Was the amount of the prospective medical already entered into evidence during the course of the arbitration? No, Your Honor. It wasn't? The remand order specifically states the matter is remanded to the commission for entry of CTD awards consistent with opinion and for order. And for entry of future prospective medical treatment to cure or relieve the effects of the petitioner's injury. Was there evidence as to the future medical that was being requested at the time of the arbitration? The future medical at that time. There would be a yes or a no answer. Yes. Okay, that's good. How about CTD? Did it run until the date of the arbitration? Yes, and moving forward. And they already agreed on what the average weekly wage was? Yes, Your Honor. You lose your jurisdictional argument. Go to the merits of the case. This evidence before the court demonstrates a decision opposite that the commission is clearly apparent. Well, it would be if you knocked out Carlson's testimony. I think that's the critical threshold issue here. He makes a very compelling argument that what the circuit court was opining was a faulty evidentiary foundation, was simply matters that go to the weight rather than the admissibility of the opinion. So why does Carlson's opinion get ignored and disregarded? Well, the circuit court provides sites to establish case law that an expert's opinion is only as good as the foundation and the basis. That's true, and if the foundation is totally speculative and based on conjecture, you could set it aside. Yes. He's arguing it's not because Carlson had a number of things that he covered and considered before he gave his opinion. The circuit court cites two in its decision, which, Justices, I'm sure you have read it, cites 11 different factors as to why Dr. Carlson's opinion lacked any foundation. Petitioner was working full duty as a truck driver for 20 years. He passed an IOP physical three months prior to his work injury. There is absolutely zero evidence in the medical records of Petitioner having problems, any problems, with his hip prior to this injury. The CISBRO case is clear that if an injury aggregates a preexisting degenerative condition, then it is recoverable. As long as the injury is a cause, we don't have to show the injury is the sole proximate cause. That's why I asked him that question, and he conceded that. Yes. But there's nothing for Dr. Carlson to base that opinion on in the evidence. Wait a minute. Didn't he testify that there were degenerative changes that undoubtedly did not relate to the claimant's work accident that occurred only six days prior? He said it was degenerative changes, and he testified that it was based on his observation of a flattening of the upper portion of the femoral hips as the bowl was no longer ball-shaped. He said that couldn't possibly have happened as a result of the accident, and there was a cyst that formed below the little cartilage that remained in the joint, and that occurs with long-standing arthritis, and there was absolutely no acute changes in his hip. He had an arthritic hip, and that was Carlson's opinion, that if he'd sustained an injury to the hip two or three weeks before the MRI was taken, he would have expected to see bony edema, and there was none. Yes, but the evidence presented to the court contradicts that. The petitioner was working with no problems. He sustained an injury while operating a pallet check and slipping on ice. We understand what happened to him, but my question is if that was Carlson's opinion, why couldn't the court rely on that? Because there is no evidence supporting that his opinion that it's medically inconceivable that the petitioner would not have had symptoms prior to this accident date. The evidence actually is contrary to that. And that's one of the reasons the circuit court ruled that the testimony was speculative, because there were undisputed facts that contradicted it, but what do you have to say about this? Didn't Carlson also consider the very things that the circuit court said were undisputed and ignored? Did Carlson explain that the claimant could have passed the IADOT driver's certification examination and worked full duty immediately prior to January 6, 2015 accident? Didn't he consider that? Didn't he say that? Yes, but he did not. And how are we ignoring, how is he ignoring the undisputed facts? He does not know what the IADOT physical consists of. Again, this is a speculative opinion from the doctor. This would give any medical doctor the carte blanche to say whatever they wanted, saying, oh, I don't think this is medically conceivable that this could happen this way when there's no evidence to support that. Who determines the propriety of the medical evidence? Isn't there a well-settled case law that says the commission is presumed to have expertise in medical matters and actually we are supposed to defer to them on medical issues? Is there a case law that says that? Yes, Your Honor. All right. But, again, as the circuit court pointed out with the 11 different factors it cites in its well-reasoned order that Petitioner was working full duty prior to his injury since 1995, that he drove a semi-tractor trailer, unloaded groceries. The day of his injury, Petitioner made two stops prior to his injury with no problems. He had passed the I.D.O.C. physical. There was an acute injury on the day of the accident where Petitioner slipped on ice. He felt immediate pain in his groin for the next two days. He was sent by his employer to an immediate care facility and was noted to have an altered gait at that time. None of this was noted prior to Petitioner's work accident. He went all of it and being unable to flex the hip after the injury. And I think the circuit court took the evidence and found that the commission took one piece of speculative evidence, relied on that which should have been inadmissible, and ruled against the manifest way of the evidence in this circumstance. Any other questions? Nothing. Thank you. I want to respond to some of the points asserted by opposing counsel with regard to Dr. Carlson and the commission. Opposing counsel indicated that Dr. Carlson is unaware of his I.D.O.C. physicals and his opinion would have been cited in the court. Dr. Carlson testified at the time of his deposition about I.D.O.C. physicals, I'm sorry, DOT physicals, Department of Transportation, excluded that there are extremely limited exams for these strategies and that this was done by a physician checking for range of motion of the hip, which is exactly one of the issues he cites as something that would have preexisted the accident as a result of Petitioner's MRI and X-ray findings, which were also the basis of his opinion. He reviewed MRIs and X-rays and looked at them and said, based upon the shape of this, the resulting opinion that there is no sign of an acute recent traumatic incident, that Petitioner would have longstanding issues. So I don't think it's fair to assert that his opinions are speculative.  Because if you can't rely on an MRI and an X-ray, why are you taking it in the first place? Opposing counsel indicated that Petitioner was working with no problems. Dr. Carlson's opinion would directly contradict this. He says, based upon his exam, that it's not possible that Petitioner was working without any issues or in a normal working order of his hip. That's not to say he couldn't perform his job. It's only to say that he would have noticed he had issues, problems, and pain with certain activities of daily living. As simple as getting up from a chair, looking at somebody else in line, getting off the toilet. Didn't he actually use the phrase medically impossible? I saw that in the records. I believe he did. You should know the record better than us, right? I don't want to commit myself to saying he did. I believe he did. I'd be more than happy to check the record. He found it medically inconceivable. I remember that statement. But he made quite a few statements about it. Dr. Carlson also testified some that in his experience as a practitioner of medicine for quite a number of years and as an orthopedist that he sees people work what he called work hurt all the time or work in less than optimal condition. He indicated people do this for all sorts of reasons. He's not going to speculate as to why this individual did it. But people will persist in performing their job. So it's not determinative that a petitioner would work. Further, on the day of the accident, opposing counsel indicated that the petitioner had made two stops and had his third or last stop of the day at the time he was injured. Well, Dr. Carlson reviewed the history of the accident and found it to be a low-impact incident. Or the petitioner slipped, but he didn't fall. He just lost his footing and managed to stay on his feet. The petitioner testified that he completed or finished his load and loaded two more pallets that day and then drove his truck from Wheeling, Illinois, to the warehouse in Joliet, Illinois. And on examination, he indicated he was unsure if he stopped to get food. So I would submit that this evidence is that the petitioner's injury was not as substantial as opposing counsel would want this court to believe. And overall, I think there's a multiplicity of conflicting facts that can be interpreted in different ways in this case. But ultimately, the commission decided to rely upon the X-rays, MRIs, and Dr. Carlson's opinion. And I simply put, do not believe the opposing party can overcome the burden imposed upon them in this case. So I would ask that this court uphold the judicial order ruling of the commission. Thank you. Thank you. The matter will be taken to the advisory room for a call to the next case, please.